IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA SKILL GAMES, LLC, ) | Civil Action |
| ) | |
| Plaintiff/Counterclaim ) | No. 2:20-cv-01177-PLD |
| Defendant, ) | |
| ) | Magistrate Judge Patricia L. Dodge |
| v. ) | |
| ) | **MOTION FOR CLARIFICATION OF** |
| ACTION SKILL GAMES, LLC, ) | **CASE MANAGEMENT ORDER [ECF** |
| ) | **37], WITH PLAINTIFF'S STATED** |
| Defendant/Counterclaim ) | **CONSENT TO MEDIATION,** |
| Plaintiff, ) | **OBJECTION OF RECORD** |
| ) | **REGARDING ENE AND/OR** |
| and ) | **"HYBRID" ADR, WITH REQUEST** |
| ) | **FOR DEFENDANTS TO PAY THE** |
| POM OF PENNSYLVANIA, LLC AND ) | **COST OF ANY FORM OF ADR** |
| SAVVY DOG SYSTEMS, LLC, ) | **THEY SEEK TO IMPOSE OTHER** |
| ) | **THAN MEDIATION** |
| Intervenors. ) | |

The Western District of Pennsylvania has an Alternative Dispute Resolution ("**ADR**") process interposed for the further right of access to the federal courts. The ADR program is set forth within W.D.Pa LCvR 16.2, with the detailed rules being set forth in the Western District's ADR Policies and Procedures ("**ADRPP**"). As a general rule, the two primary methods of ADR are mediation and "early neutral evaluation" ("**ENE**"). [*See,* ADRPP][1]

Plaintiff has elected mediation and is willing to participate in a mediation pursuant to ADRPP §3. Defendants have proposed some form of a "hybrid" ADR pursuant to ADRPP §4 to be followed by a mediation pursuant to ADRPP §3.

Plaintiff does not stipulate, does not consent, and hereby formally objects of record, to an ENE and/or any "hybrid" ENE.

---

[1] Although the ADRPP addresses multiple forms of ADR, those forms are not expressly placed at issue by this motion.

1

The divergence between the parties as to the ADR process was raised by the parties in the record in their 26(f) Report [ECF 30, ¶¶6, 16] and ADR Consent [ECF 32], both filed in anticipation of the December 4, 2020 initial scheduling conference with this Court ("**Scheduling Conference**"). [Minutes Entry, ECF 36; *see also,* Pre-Conference Order, ECF 26]

At the Scheduling Conference, this Court appeared inclined to order (or otherwise appeared to have a preference for) the "hybrid" form of ADR proposed by Defendants. However, in this Court's Case Management Order [ECF 37, "**Case Management Order**"], the parties were ordered once again only to file a "Stipulation regarding ADR process" without additional specifications of the command in light of the state of the record. [ECF 30, ¶¶6, 16; ADR Consent, ECF 32][2]

At the Scheduling Conference, Plaintiff considered again Defendants' position regarding the "hybrid" ADR, but Plaintiff retains its objection and is not in the position to stipulate to an ENE and/or a "hybrid" ADR. Plaintiff welcomes a mediation pursuant to ADRPP §3.

In brief, a mediation and an ENE are very different animals of ADR. Plaintiff asserts that ordering a mediation may be substantively within the inherent sound discretion of the venue, but imposing, by an order to compel under threat of contempt and sanctions, a party to undergo a more complex and expensive case "evaluation," while making a party pay what is often extremely high hourly rates, inherently exceeds the proper jurisdiction of the Court.[3] The reasons are set forth below.

---

[2] The Court invited any necessary or appropriate motion practice on the positions of the parties arising from the Scheduling Conference.

[3] Any party may, by its own election, obtain all those "evaluations" that it freely chooses to obtain by its own payment for the service. The question here is whether, by virtue of a disagreement between the parties, either a party or the court can or even should impose "evaluations" in the case upon a party at the party's expense. This motion implicates a policy default, that mediation is a tried and true mechanism of ADR, and it is the least imposition upon parties who cannot agree to methodology. The undersigned has been admitted to practice in this venue since November 21, 1988, for more than 30 years, and has served as an ENE evaluator multiple times, being a member of the panel since the ADR ENE program was initiated. The undersigned files this motion respectfully, after careful review, and with first-hand knowledge of the ADR program from multiple perspectives.

As set forth in the ADRPP:

> **1.1 "Mediation"** refers to a nonadjudicative, third-party intervention wherein an impartial neutral, selected by the parties, *facilitates negotiations* between the parties to help them reach a mutually acceptable agreement. *The parties are responsible for negotiating a settlement. The neutral's role is to assist the process in ways acceptable to the disputants.*
>
> **1.2 "Early Neutral Evaluation"** refers to a nonadjudicative, third-party intervention by an impartial experienced attorney, selected by the parties, with subject matter expertise. *After reviewing concise presentations of the parties' claims, the neutral provides a non-binding evaluation of the case and thereafter is available to assist the parties in reaching an agreement.*

[ADRPP §1 (emphasis added)] As stated above, these processes are defined differently, because they are very distinct processes with different applications and goals. To wit, the ADRPP sets forth for mediations:

> **3.1 Description.** Mediation is a flexible, non-binding, confidential process in which a neutral person (the mediator), selected by the parties, *facilitates settlement negotiations.* Generally, mediation will utilize a facilitative approach, but the mediator should be prepared to provide evaluative assessments *if requested by all parties.* The mediator improves communication across party lines, helps parties *articulate their interests and understand those of their opponent, probes the strengths and weaknesses of each party's legal positions*, identifies areas of agreement and helps generate options for a mutually agreeable resolution to the dispute. *The mediator generally does not give an overall evaluation of the case. A hallmark of mediation is its capacity to expand traditional settlement discussion and broaden resolution options, often by exploring litigant needs and interests that may be formally independent of the legal issues in controversy.*
>
> **3.7 No Written Mediation Statements Required.** Written mediation statements are not required for mediations.

[ADRPP §3 (emphasis added)] Distinguishing a mediation process from an ENE process, the ADRPP continues for an ENE:

> **4.1 Description.** In Early Neutral Evaluation (ENE) the parties and their counsel, in a confidential session, *make compact presentations of their claims and defenses, including key evidence as developed at that juncture, and receive a non-binding evaluation* by an experienced neutral lawyer, selected by the parties, with subject matter expertise. The evaluator also helps identify areas of agreement, offers case-planning suggestions and, *if requested by the parties, settlement assistance.*

**4.8 Written Statements.  A. Time for Submission.** No later than 10 calendar days before the ENE, each party must submit directly to the evaluator, and must serve on all other parties, a written Statement.  Written Statements. A. Time for Submission. No later than 10 calendar days before the ENE, each party must submit directly to the evaluator, and must serve on all other parties, a written Statement.  ... **C. Content of Statement.** The Statements must be concise and should include any information that may be useful to the evaluator, for example: 1. Identify, by name and title or status: a. The person(s) with decision-making authority, who, in addition to counsel, will attend the ENE as representative(s) of the party, and b. Persons connected with a party opponent (including an insurer representative) whose presence might substantially improve the utility of the ENE or the prospects for settlement; 2. Describe briefly the substance of the suit, addressing the party's views of the key liability issues and damages and discussing the key evidence; 3. Address whether there are legal or factual issues whose early resolution would reduce significantly the scope of the dispute or contribute to settlement negotiations; Identify the discovery that is necessary to equip the parties for meaningful settlement negotiations; 5. Describe the history and status of any settlement negotiations; and Include copies of documents out of which the suit arose (e.g., contracts), or whose availability would materially advance the purposes of the evaluation session, (e.g., medical reports or documents by which special damages might be determined).

**4.9 Procedure at an Early Neutral Evaluation.  A. Components of Early Neutral Evaluation** Unless otherwise agreed to by the parties and evaluator, the evaluator must: 1. Permit each party (through counsel or otherwise), orally and through documents or other media, to present its claims or defenses and to describe the principal evidence on which they are based; 2. Help the parties identify areas of agreement and, where feasible, enter stipulations; 3. Assess the relative strengths and weaknesses of the parties' contentions and evidence, and explain the reasoning that supports these assessments; 4. Estimate, where feasible, the likelihood of liability and the dollar range of damages; 5. Help the parties devise a plan for sharing the important information and/or conducting the key discovery that will equip them as expeditiously as possible to enter meaningful settlement discussions or to position the case for disposition by other means; Help the parties assess litigation costs realistically; and 7. If the parties are interested, help them, through private caucusing or otherwise, explore the possibility of settling the case; and 8. Determine whether some form of follow up to the session would contribute to the case development process or to settlement.  ... **C. Evaluation.** The evaluation must be presented to the parties orally. The recipients of any oral presentation should include party representatives, insurers and risk pool representatives, as applicable. The parties should determine in advance whether the oral evaluation will be delivered in a joint or separate session. In the event that the parties cannot agree, the oral evaluation shall be delivered in separate sessions. Any party's evaluation may be reduced to writing and provided to that party upon their request. Any evaluation, oral or written, constitutes confidential information which shall not be disclosed to the assigned Judicial Officer or anyone else except as provided in Section 6.D., infra.

[ADRPP §4 (emphasis added)]

1. Although it may be a natural presupposition to conclude that Plaintiff's objection to an ENE results from some fear of an independent evaluation, the undersigned states that the objection is based upon a number of factors within the privileged decision-making scope of an attorney and client for this particular case. Plaintiff simply selects mediation because mediation has those particular attributes that Plaintiff prefers to the exclusion of another process's attributes.

2. It is beyond argument that a mediation process and an ENE process are very distinct procedures, with different goals, benefits and burdens. In a mediation, the essential quality is that the *parties control* a settlement negotiation. The mediator works a settlement negotiation, *controlled by the parties,* as the essential purpose.

However, in an ENE, the process is significantly more intensive, with control of the conversation being procedurally relinquished to an "evaluator," which requires the "neutral" to take on a higher legal of control of the ADR, essentially, to evaluate the case on the merits and often to take significant necessary time to *assess and evaluate;* to wit, per ADRPP 4.9.A, an ENE includes, presentation of claims, identifying stipulations, assessing and explaining the relative strengths and weaknesses of contentions and evidence, assessing damages, helping to devise a plan for discovery, and assessing litigation costs. [ADRPP 4.9.A] Only "*if the parties are interested, to help them, through private caucusing or otherwise, explore the possibility of settling the case.*" [ADRPP 4.9.A.7 (emphasis added)] The "*evaluator also helps identify areas of agreement, offers case-planning suggestions and, if requested by the parties, settlement assistance*." [ADRPP §4.1 (emphasis added)] While reasonable people can disagree, the undersigned's experience and conclusion is that there are substantive prejudicial risks introduced in an ENE not otherwise

5

introduced in a mediation, particularly in light of the different standards of compliance and "good faith" for the very different procedural contexts.[4]

3. To avoid the express constraints that require settlement discussions to follow an ENE only *if the parties agree*, Defendants suggest two separate ADR processes, denominated by them with the euphemism of "hybrid," being an ENE that is followed by a mediation. Although reasonable people might have different opinions and may stipulate otherwise, the undersigned has already stated in its 26(f) statement [ECF 30, ¶16] that a mediator who has performed an "evaluation" (and all that goes with an ENE) is thereafter tainted for the mediation, having reached detailed assessments, noting that this position may be contemplated by the separate rules, and the requirement of *mutual assent* in mixing them together. Here, by creating two ADR processes denominated as a "hybrid" whole, Defendants avoid each method's essential individual constraint of necessary *consent* to move into the other method.

Indeed, a "hybrid" is not expressly contemplated by the ADRPP; to wit, as set forth in LCvR 16.2:

> **B. The Court adopts LCvR 16.2 to make available to litigants a broad range of Court-sponsored ADR processes to provide quicker, less expensive and potentially more satisfying alternatives to continuing litigation without impairing the quality of justice or the right to trial. The Court offers diverse ADR services to enable parties to pursue the ADR process that promises to deliver the greatest benefits to their particular case. In administering these Local ADR Rules and the ADR program, the Court will take appropriate steps to assure that no referral to ADR results in an unfair or unreasonable economic burden on any party.**
>
> **C. ADR Options. The Court-sponsored ADR options for cases include: 1. <u>Mediation</u> [;] 2. <u>Early Neutral Evaluation</u> [;] 3. <u>Arbitration</u>**

---

[4] For example, an ENE evaluator may make particular requests of a party in order to perform the "evaluation." A party must respond to the ENE evaluator under the obligation to cooperate with the process in good faith. This obligation does not exist in a mediation. A party may not want a duty to expose part of its body of case considerations at that point in the process in that forum, because that exposure may create a prejudicial early advantage for the adverse party. For example, exposing a strength to an evaluator on one side may get somehow framed into a weakness assessment for the other side, or *visa versa.* An ENE adduces information by compulsion that a mediation does not adduce. If a party *stipulates by assent* to an ENE or some form of hybrid ADR process, that is a strategic *choice and decision* for trial counsel.

[LCvR 16.2B] There are only three express options, and no "hybrid" processes are expressly articulated. [5] Moreover, the "hybrid" process contradicts what is often expressly stated in ADRPP 3.1, "*the mediator should be prepared to provide evaluative assessments <u>if requested by all parties</u>*" and ADRPP 4.1 "*<u>if requested</u> by the parties, settlement assistance,*" and ADRPP 4.9D, "*At any point during the ENE, <u>if all parties agree</u>, they may proceed to mediation and/or discuss settlement.*" (emphasis added)

It is respectfully suggested that, at this early stage of the proceeding, the Court cannot, without some prejudice by bias, start to inflict "creative" or hybrid processes in order for a party to exercise the right to further access to the federal courts. Plaintiff suggests that mediation is the *least restrictive method*, it is the *least intrusive method*, and it is the *least expensive* ADR process by default. Accordingly, Plaintiff suggests that the Western District would exceed its proper jurisdiction to impose more than the least restrictive method of ADR—being mediation—as part of a court-ordered ADR process, in order for a party to exercise a Constitutional right to gain further access to the federal courts. Forcing a party into an *evaluation process* standard without its consent, in conjunction with a duty of good faith matched with sanction potential, is a violation of the Constitutional right of access. *See, United States Constitution,* Articles 5, 13 and 14. *See, generally, Lea v. PNC Bank,* 2016 WL 738053 (W.D. Pa. 2016), and *Vay v. Huston,* 2015 WL 791430 (W.D.Pa 2015), and the cases cited therein.

4. If Defendants seek a case evaluation, by their free choice, Defendants should pay for the service, in all fairness to the party upon whom the cost would otherwise be compelled against its will.

---

[5] Plaintiff acknowledges the "options...include" phraseology, but understands that phrase is intended to allow the parties freely to stipulate to other creative methods, but not to allow the Court to force ENE's or arbitrations, significantly more expensive options, contrary to the purpose stated in the cited local rule. The undersigned respectfully suggests that the ADRPP should specify mediation as the default mechanism if the parties are not able to stipulate. An ADRPP without the least restrictive default for a methodology baits unnecessary disputes between parties with different interests. *See, Vay v. Huston, infra,* 2015 WL 791430 (W.D.Pa 2015) (noting hybrid by stipulation).

Access to the federal courts is determined by the filing fee already paid by Plaintiff. Plaintiff concedes that this venue has proper authority to command a mediation pursuant to its inherent power, with a reasonable *fixed* administration fee. To the extent that the program is administered by judicial command whereby one party, perhaps more financially capable, can impose a variable 50% cost onto the other party, by inflicted selection of method, and by inflicted selection of a neutral that can exceed the agreed hourly rate or fee of the party's own legal counsel (sometimes exceeding $500 per hour for multiple days of service, particularly in an ENE), is inherently unfair, in violation of procedural and substantive due process, as the cost of service and the financial taking were not the subject of the litigation before which the taking has occurred.[6] *United States Constitution*, Articles 5 and 14. Money is the embodiment of time. No person should be compelled by the Court, under threat of sanction, to purchase an expensive "evaluation service" that is not freely chosen by the party in order to access the judicial relief arising from another cause.

5. LCvR 16.2D sets forth that, "*If the parties cannot agree on a process before the end of the Scheduling Conference, the Judge will make an appropriate determination and/or selection for the parties.*" The local rule appears procedurally mandatory. The Scheduling Conference has occurred, and the Case Management Order does not make the appropriate determination required by this venue's local rule. The Scheduling Order again orders a stipulation that was already the subject of its October 30, 2020 Order. [ECF 26] The parties have agreed, in part, to a mediation. The Defendants also want an ENE to which Plaintiff does not stipulate. Plaintiff respectfully suggests that it is beyond the jurisdiction of this Court and otherwise improper to command the parties to enter into a stipulation against their better judgment, particularly on a method that is more expensive and not the least

---

[6] The Court may invite a party upon whom a hardship is placed by the program to file appropriate motion practice for financial relief. In doing so, the party must generally disclose its constraints such that the adverse party may glean information regarding such party's ability to survive the cost of the process, which is inherently unfair. The cost of any required process to access the courts should be subsumed into the filing fee or some *fixed* administrative fee, with an available neutral panel who has agreed to a controlled cost for the proceeding, allowing the parties to opt-out by stipulation otherwise.

restrictive method of ADR. Accordingly, an order pursuant to LCvR 16.2D is respectfully requested, with Plaintiff reserving all rights that the law provides.

In summary:

a. Plaintiff consents to mediation pursuant to ADRPP §3.

b. Plaintiff objects to any other form of ADR, including, but not limited to two processes, or any "hybrid" processes.

c. Plaintiff concedes that this Court has substantive authority to command mediation as part of its inherent power, the fee being a separate consideration. Plaintiff respectfully believes that this Court imposing any form of a more expensive method of ADR exceeds its jurisdiction, is an inherent abuse of discretion, violates the ADRPP, and violates Plaintiff's legal rights, by placing burdens and conditions to access the U.S. Courts that are not reasonably calculated to be the least restrictive and least expensive tried and true accepted methodology for ADR, being mediation.

d. As Plaintiff has consented to ADRPP §3 mediation, no statement regarding the fee on that basis is required. However, to any extent that some other methodology is imposed by the Court, Plaintiff first objects to payment of any fee, hereby requesting that Defendants pay the entire fee for the service they seek the Court to impose, or, in the alternative, Plaintiff objects to the Court's appointment of any neutral with a fee that exceeds $245 per hour and any ARD that would exceed eight (8) total hours of service.

e. Granting Plaintiff's requested relief is not prejudicial to Defendants; granting Defendants' proposed dual "hybrid" ADR methodology without Plaintiff's consent is prejudicial to Plaintiff.

f. The Scheduling Conference has occurred, and LCvR 16.2D requires that the Court make the ADR selection.

WHEREFORE, Plaintiff prays that this Court enter an order clarifying its Case Management Order [ECF 37] designating mediation pursuant to ADRPP §3 or such alternative relief as set forth herein.

Dated: December 7, 2020               Respectfully submitted,

                                      **TECHNOLOGY & ENTREPRENEURIAL**
                                      **VENTURES LAW GROUP, PC**

                                      *s/Gregg Zegarelli*
                                      Gregg R. Zegarelli

2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241
412.559.5262 412.833.0601 (fax)
gregg.zegarelli@zegarelli.com
*Attorney for Plaintiff/Counterclaim Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of December 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

                                        **TECHNOLOGY & ENTREPRENEURIAL VENTURES LAW GROUP, PC**

*s/Gregg Zegarelli*
Gregg R. Zegarelli

2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241
412.559.5262
412.833.0601 (fax)
gregg.zegarelli@zegarelli.com
*Attorney for Plaintiff/Counterclaim Defendant*